UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BELINDA J. SALTER,

          Plaintiff,

    v.

CAROLYN W. COLVIN,

          Defendant.

Case No.  14-cv-04134-JST

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Re: ECF Nos. 16, 17

In this Social Security action, Plaintiff Belinda J. Salter appeals a final decision of Defendant Commissioner Carolyn W. Colvin, denying Plaintiff's application for disability insurance benefits and supplemental social security income.  Before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 16, 17.  The matter is deemed fully briefed and submitted without oral argument pursuant to Civil Local Rule 16-5.  Upon consideration of the moving papers, and for the reasons set forth below, Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.

I.    **BACKGROUND**

    A.    **Factual and Procedural History**

Plaintiff Belinda Salter claims disability beginning on November 9, 2010.  Administrative Record ("AR") 174, 178.  Salter is a 51-year-old woman who was last employed as a maintenance worker for Greyhound, where her responsibilities included fueling and cleaning buses.  AR 243, 258.  Salter reports that she was severely sexually harassed by her supervisor and co-workers at Greyhound, and that this harassment has caused depression and anxiety and compromised her memory and ability to concentrate.  AR 32-33.

In 2011 and 2012, Salter was evaluated and treated by numerous health care providers,

1   including providers at Mission Family Therapy, Inc., AR 311-19, 332-48, 377-87; Mission

2   Neighborhood Health Center/ Excelsior Clinic, AR 321-28; John F. Kennedy University Center

3   for Holistic Counseling, AR 330; Pacific Research Partners, AR 357-59; Alameda County

4   Medical Center, AR 400-01; Street Level Health Project, AR 403; Sausal Creek Outpatient

5   Stabilization Clinic, AR 405-24; La Clinica, AR 426-31; Lifelong Medical Care, AR 433-51;

6   Alameda County Social Services Agency, AR 453-56; and the Community Counseling Center of

7   California State University, East Bay, AR 458-73.  Providers diagnosed Salter with major

8   depressive disorder, anxiety disorder, bipolar disorder, and post-traumatic stress disorder.  See,

9   e.g., AR 318, 357, 411, 454.  They noted numerous limitations in her ability to function in the

10  workplace, including problems with understanding and memory, sustained concentration and

11  persistence, and social interaction.  See, e.g., AR 312-13, 429-30.

12      Salter filed her applications for disability insurance benefits and supplemental security

13  income under Titles II and XVI of the Social Security Act on June 28, 2011.  AR 174, 178.  Her

14  claims were denied by the Social Security Administration on October 3, 2011, and denied again

15  upon reconsideration on April 3, 2012.  AR 95, 101.  An administrative law judge ("ALJ") heard

16  Salter's case on November 26, 2012, and issued a decision on January 15, 2013, finding that she

17  was not disabled within the meaning of the Social Security Act.  AR 8-18.  The ALJ evaluated

18  Salter's claim using the five-step sequential evaluation process for disability required under the

19  Code of Federal Regulations:

20          In step one, the ALJ determines whether a claimant is currently
            engaged in substantial gainful activity.  If so, the claimant is not
21          disabled.  If not, the ALJ proceeds to step two and evaluates whether
            the claimant has a medically severe impairment or combination of
22          impairments.  If not, the claimant is not disabled.  If so, the ALJ
            proceeds to step three and considers whether the impairment or
23          combination of impairments meets or equals a listed impairment
            under 20 C.F.R. pt. 404, subpt. P, App. 1.  If so, the claimant is
24          automatically presumed disabled.  If not, the ALJ proceeds to step
            four and assesses whether the claimant is capable of performing her
25          past relevant work.  If so, the claimant is not disabled.  If not, the
            ALJ proceeds to step five and examines whether the claimant has
26          the residual functional capacity ("RFC") to perform any other
            substantial gainful activity in the national economy.  If so, the
27          claimant is not disabled.  If not, the claimant is disabled.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); see 20 C.F.R. §§ 404.1520(a), 416.920(a)

2   (2012).

3       At step one, the ALJ found that there was no evidence of substantial gainful activity after

4   November 9, 2010.  AR 13.  At step two, he found that Salter had the following severe

5   impairments: anxiety disorder and bipolar disorder.  AR 13.  At step three, he concluded that Salter

6   did not have an impairment or combination of impairments that meets or medically equals the

7   severity of one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1, and

8   therefore proceeded to step four.  AR 13-14.  The ALJ then found that Salter had the RFC to

9   perform a full range of work at all exertional levels, but with the following nonexertional

10  limitation: no public contact.  AR 14.  At step four, he concluded that Salter was capable of

11  performing her past relevant work as a cleaner as actually and generally performed, and therefore

12  was not disabled under the Social Security Act.  AR 18.

13      More specifically, the ALJ found that "the overwhelming psychiatric evidence of record

14  shows generally that the claimant's prognosis is good, and that her symptoms can be well-

15  controlled by psychotropic medications and treatment."  AR 17.  He concluded that although

16  "there is sufficient evidence that the claimant has difficulty socially, . . . there is no credible,

17  reliable evidence that she has any difficulty with activities of daily living or with concentration,

18  persistence, or pace."  AR 17.

19      In reaching these conclusions, the ALJ found that Salter's statements about the intensity,

20  persistence, and limiting effects of her symptoms were not entirely credible "[e]ssentially"

21  because:

22          [T]hose providers with the most contact with the claimant have
            opined that she improved with care, even to the point of being able
23          to return to her job. Yet, the claimant's pursuit of mental health care,
            as opposed to repeated evaluations by different individuals with
24          whom she declined or failed to pursue treatment, has been sporadic,
            and she has not satisfactorily explained why she cannot perform her
25          past work — or any other work — in a different environment with a
            different employer.
26

27  AR 15.  The ALJ relied principally on the opinions of the state agency medical examiner and Dr.

28  Marlin Griffith, according their opinions "great weight" because he found them "consistent with

3

1    the preponderance of the credible psychiatric evidence of record." AR 17.  However, he

2    discounted their conclusions that Salter's limitations with respect to concentration and persistence

3    restrict her to simple repetitive tasks, because these conclusions were based heavily on Salter's

4    self-report, which he found not credible.  AR 17.  The ALJ also relied on the testimony of Stephen

5    Schmidt, a vocational expert.  AR 18.  The ALJ accorded less weight to the medical source

6    statements of Alameda Social Services and Dr. Kenneth Parker because he found that they were

7    "not supported by the longitudinal psychiatric evidence of record," because they each saw Salter

8    on only two occasions, and because they relied heavily on her self-report.  AR 17.

9         The Appeals Council of the Social Security Administration denied review of the ALJ's

10   decision on July 10, 2014.  AR 1.  Salter subsequently filed this action seeking review of the

11   denial of benefits.  ECF No. 1.

12        **B.      Jurisdiction**

13        The Court has jurisdiction to review final decisions of the Commissioner pursuant to 42

14   U.S.C. section 405(g).

15        **C.      Legal Standard**

16        The Court may set aside a denial of benefits only if it is "not supported by substantial

17   evidence in the record or if it is based on legal error."  Merrill ex rel. Merrill v. Apfel, 224 F.3d

18   1083, 1084-85 (9th Cir. 2000).  "Substantial evidence is relevant evidence which, considering the

19   record as a whole, a reasonable person might accept as adequate to support a conclusion."  Id. at

20   1085.  It is "more than a scintilla but less than a preponderance."  Thomas v. Barnhart, 278 F.3d

21   947, 954 (9th Cir. 2002).  The Court "review[s] the administrative record in its entirety to decide

22   whether substantial evidence to support the ALJ's decision exists, weighing evidence that supports

23   and evidence that detracts from the ALJ's determination."  Drouin v. Sullivan, 966 F.2d 1255,

24   1257 (9th Cir. 1992).  "Where evidence exists to support more than one rational interpretation, the

25   Court must defer to the decision of the ALJ."  Id. at 1258.  The ALJ is responsible for

26   determinations of credibility, resolution of conflicts in medical testimony, and resolution of all

27   other ambiguities.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

28   **II.      DISCUSSION**

United States District Court
Northern District of California

4

Salter argues that the Court should grant summary judgment in her favor because substantial evidence does not support either (1) the ALJ's finding that she had no limitation regarding supervisors and co-workers; or (2) the ALJ's finding that she had no limitation regarding sustained concentration and persistence. ECF No. 16 at 5, 10.

## A.   Supervisors and Co-workers

Salter challenges the ALJ's conclusion that she had a functional limitation of no public contact, but that she had no functional limitation regarding supervisors and co-workers. ECF No. 16 at 5. She argues first that the ALJ's RFC assessment is inconsistent with his rationale, and second that the ALJ erroneously evaluated medical opinions. Id. at 5, 6.

### 1.   Inconsistency in the ALJ's Decision

Salter is correct that the ALJ's decision is inconsistent as it relates to public and social contact. The ALJ concluded that that Salter had "the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitation: no public contact." AR 14. In explaining this determination, he stated that he accorded "great weight" to the opinions of Dr. Griffith and the state agency medical examiner, who both "concluded the claimant has moderate or marked limitation in social functioning," and that he accounted for this "in precluding the claimant from work with any social contact." AR 17.

For Salter, whose severe impairments stem from sexual harassment by her supervisor and co-workers, there is a significant difference between work with "no public contact" and work with "no social contact." The medical opinions to which the ALJ refers document moderate and marked limitations in her ability to interact both with the general public, and with supervisors and co-workers. AR 73, 313. The ALJ describes his RFC determination as limiting Salter to work with "no social contact," which would account for all of these limitations. AR 17 (describing the RFC as "precluding the claimant from work with any social contact;" allowing her to work "in a harassment-free environment with no social contact;" and accounting for Salter being "socially isolated"). But the decision in fact limits her to "no public contact," and does not explain how this determination accounts for her acknowledged social limitations in interacting with supervisors and co-workers. AR 14. Furthermore, in questioning the vocational expert about Salter's past work at

United States District Court
Northern District of California

Greyhound, the ALJ asked only, "Does the cleaner II require any public interaction?" AR 49. When Salter's attorney asked whether a person who is unable to accept instructions or to respond appropriately to criticism from their supervisors would be capable of performing this work, the vocational expert replied, "No." AR 49. See Garrison v. Colvin, 759 F.3d 995, 1011 (9th Cir. 2014) ("The testimony of a [vocational expert] is valuable only to the extent that it is supported by medical evidence and has no evidentiary value if the assumptions in the hypothetical are not supported by the record." (internal quotation marks omitted)).

Although the ALJ's opinion confusingly conflates "public contact" and "social contact," and does not explain how the RFC determination accounts for Salter's limitations concerning supervisors and co-workers, the Court concludes that this error is harmless. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012). "[A]n ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination." Id. (internal quotation marks omitted). In other words, the Court should "look at the record as a whole to determine whether the error alters the outcome of the case." Id.

Here, there is ample evidence in the record to support the ALJ's conclusion that Salter was able to perform her past work as a cleaner, even though that work involves some level of interaction with supervisors and co-workers. Dr. Griffith indicated that Salter had marked limitations in her ability to respond appropriately to supervisors and get along with co-workers, but also reported that she was "capable of low-stress jobs," and elsewhere that he did "not anticipate any problems in her return to work if her safety from harassment in the work place is assured." AR 313, 314, 380. The state examiners, Dr. Lee and Dr. Lucila, noted moderate limitations with respect to interactions with supervisors and co-workers, but also concluded that "Ms. Salter is mentally capable of adapting to and performing sustained simple tasks, with limited public/peer and supervisor interactions," and that she "can do simple work." AR 56, 59, 69, 73. Vocational expert Stephen Schmidt identified Salter's past work as "Cleaner II . . . 919.687-014." AR 48. According to Department of Labor guidance, this work involves "not significant" interaction with people (including taking instructions and helping), and talking and hearing are "not present." Dictionary of Occupational Titles § 919.687-014 (4th ed. 1991), 1991 WL 687897;

6

1    *see also* Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007) ("In making disability

2    determinations, the Social Security Administration relies primarily on the *Dictionary of*

3    *Occupational Titles* for information about the requirements of work in the national economy."

4    (internal quotation marks omitted)).

5         In summary, because the record supports the ALJ's conclusion that Salter could perform

6    her past relevant work as a cleaner, his failure to explain why her limitations with respect to social

7    interaction, as opposed to public interaction, did not preclude this work did not affect the outcome

8    of the case, and was therefore harmless error.

9                          **2.      Evaluation of Medical Opinions**

10        Second, Salter argues that the ALJ erroneously evaluated Dr. Griffith, Dr. Lee, and Dr.

11   Lucila's medical opinions because he did not explain his implicit rejection of their conclusions

12   that Salter had limitations in her ability to interact with supervisors and co-workers. ECF No. 16 at

13   6-10.  With respect to Dr. Griffith, Salter also argues that the ALJ failed to afford the appropriate

14   deference to the opinion of Salter's treating psychologist.  ECF No. 16 at 9 (citing Garrison, 759

15   F.3d at 1013).  Finally, Salter contends that the ALJ's statement that she did not satisfactorily

16   explain why she could not work was in error because the treating-source opinions she submitted

17   provided this explanation.[1]

18        As explained above, the ALJ's conclusion that Salter could return to her past work as a

19   cleaner was consistent with Dr. Griffith, Dr. Lee, and Dr. Lucila's explanation of her social

20   limitations with respect to supervisors and co-workers.  Consequently, any failure by the ALJ to

21   explain the inconsistency between the doctors' opinions and his RFC determination was harmless

22   and does not warrant reversal.

23                     **B.      Concentration and Persistence**

24   _____

25   [1] Salter also states that "Dr. Griffith's opinions were consistent with Dr. Parker's opinions,"
     without explaining why this might warrant reversal of the ALJ's decision.  ECF No. 16 at 9.  The
26   ALJ accorded Dr. Parker's opinions less weight because he found that they were "not supported
     by the longitudinal psychiatric evidence of record;" because Dr. Parker had seen Salter on only
27   two occasions and did not have the opportunity to review her prior history; and because Dr. Parker
     "relied heavily on the claimant's self-report."  AR 17.  Salter does not challenge the decision to
28   accord Dr. Parker's opinion less weight.  Similarities between an opinion that the ALJ credits and
     an opinion he discounts do not warrant reversal.

United States District Court
Northern District of California

Salter also argues that substantial evidence does not support the ALJ's conclusion that she had no limitation regarding sustained concentration and persistence because the ALJ misunderstood and erroneously rejected Dr. Griffith and Dr. Lee's opinions. ECF No. 16 at 10-12. In particular, Salter argues that the ALJ's statement that these opinions relied heavily on Salter's not credible self-report is not a legally sufficient basis to discredit them; and that the ALJ failed to evaluate Dr. Griffith's opinions as those of a treating provider. ECF No. 16 at 11-12. In Salter's view, "there is no evidence" that she could perform her past relevant work, or any other work, given her limitations in the areas of sustained concentration and persistence. Id.

This argument is unpersuasive. Substantial evidence in the record supports both the ALJ's interpretation of the opinion evidence concerning concentration and persistence, and his decision to reject this evidence.[2] First, the Court disagrees that the ALJ misunderstood or misstated the evidence when he stated that Dr. Griffith and the state agency medical examiner concluded that "the claimant is limited to simple repetitive tasks due to her moderate to marked inability to sustain concentration and persistence." AR 17. Dr. Griffith's evaluations indicated that Salter had moderate to marked limitations in the area of sustained concentration and persistence, but elsewhere indicated that, if free from harassment, she would be capable of returning to her work at Greyhound. AR 312, 380. Dr. Lee and Dr. Lucila also found sustained concentration and persistence limitations, but concluded that Salter was "mentally capable of adapting to and performing sustained simple tasks" and could "do simple work." AR 56, 58-59, 69, 72. Salter suggests that the doctors opined that her limitations in this area were more restrictive than the ALJ acknowledged, but there is adequate evidence to support the ALJ's view, and any ambiguities in the evidence were for the ALJ to resolve. Magallanes, 881 F.2d at 750.

Second, the Court concludes that the ALJ adequately explained his decision not to credit these opinions. The ALJ acknowledged that the notes of Dr. Griffith, Salter's treating provider,

---

[2] Because the Court finds that substantial evidence supports the ALJ's conclusions regarding concentration and persistence, it does not address the Commissioner's argument that any error was harmless in light of the ALJ's statement that even if he were to find that Salter was limited to simple repetitive tasks because of concentration and persistence limitations, he would still conclude that she was capable of performing her past relevant work. ECF No. 17 at 10-11; AR 17.

United States District Court
Northern District of California

were "[t]he most extensive and reliable treatment records," but found "no basis" in the doctors'

conclusions concerning concentration and persistence, which he stated were based "heavily on the

claimant's self-report." AR 17.  He found Salter's self-report not credible in light of Dr. Griffith's

statement that she could return to work, as long as there was no harassment, and because he found

that Salter had a propensity to seek numerous evaluations, but not pursue follow-up treatment.  AR

17.  The ALJ may properly credit some portions of a doctor's opinion and not others; and may

discount an opinion, even an opinion of a treating provider, that is based solely on the claimant's

own perception or description of his or her symptoms.  Magallanes, 881 F.2d at 753; Ukolov v.

Barnhart, 420 F.3d 1002, 1005-06 (9th Cir. 2005); see also Batson v. Comm'r of Soc. Sec.

Admin., 359 F.3d 1190, 1195 n.3 (9th Cir. 2004) (discounting the treatment notes of a physician

who did not provide "objective medical evidence of the limitations asserted in his report," and

who stated that the limitations were based upon the claimant's subjective descriptions of pain).

It is also within the ALJ's purview to resolve credibility questions.  Parra v. Astrue, 481

F.3d 742, 750 (9th Cir. 2007).  "The ALJ must provide 'clear and convincing' reasons to reject a

claimant's subjective testimony, by specifically identifying 'what testimony is not credible and

what evidence undermines a claimant's complaints.'"  Id. (quoting Lester v. Chater, 81 F.3d 821,

834 (9th Cir. 1995)).  "[I]n assessing a claimant's credibility, the ALJ may properly rely on

'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course

of treatment.'"  Molina, 674 F.3d at 1113 (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1039

(9th Cir. 2008)).  Here, the ALJ clearly explained that he discredited Salter's reporting of her own

symptoms because of the opinion of her treating provider that she could return to work and

because of her pattern of repeatedly seeking evaluations, but not consistently pursuing treatment.

AR 17.  He noted that, most recently, she had been scheduled for eight therapy sessions, but

attended only four of them.  AR 17.  The ALJ's credibility determination is also supported by

evidence that Dr. Griffith had some concerns about Salter's self-reporting of her symptoms.  In

one evaluation, Dr. Griffith noted that Salter "may not have answered [some questions] in a

completely forthright manner," and that certain test results "are unlikely to be a valid reflection of

the respondent's experience — the following interpretation is provided only as an indication of the

United States District Court
Northern District of California

9

1  respondent's self-description."  AR 336 (emphasis omitted).

2      The Court thus finds that the ALJ's conclusions with respect to concentration and

3  persistence are adequately supported by substantial evidence in the record.

4                                    **CONCLUSION**

5      For the foregoing reasons, Plaintiff's motion for summary judgment is denied and

6  Defendant's motion for summary judgment is granted.

7      IT IS SO ORDERED**.**

8  Dated:  June 9, 2015

9

10  _____

11                      JON S. TIGAR
                United States District Judge

United States District Court
Northern District of California

10